1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                        NORTHERN DISTRICT OF CALIFORNIA

8

9    ZAMEER RIAZ AZAM,                          No. C 05-1858 MHP (pr)

10              Plaintiff,                       **ORDER DENYING SUMMARY
                                                 JUDGMENT MOTION**
11        v.

12   OFFICER M. JOHNSON, SAN RAMON
     POLICE DEPARTMENT,
13
                Defendant.
14   _____/

15
                                  **INTRODUCTION**
16
             This case is now before the court for consideration of defendant's motion for
17
     summary judgment and plaintiff's motion to stay proceedings on the summary judgment
18
     motion so he can do further discovery.  For the reasons discussed below, defendant's motion
19
     will be denied and plaintiff's motion will be denied as moot.
20
                                  **BACKGROUND**
21
             In this action for false arrest, Zameer Azam has sued a police officer who arrested him
22
     for violating a restraining order to keep away from his girlfriend.  The parties agree that
23
     Azam was not in violation of the restraining order because it had been modified to eliminate
24
     the provisions that required him to keep away from his girlfriend.  The police officer urges
25
     that he had probable cause and is entitled to qualified immunity because he made a
26
     reasonable mistake about the terms of the order based on information he received from
27
     official sources.
28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    The following facts are undisputed unless otherwise noted:

2    Defendant Mark Johnson was employed by the Contra Costa County Office of the

3    Sheriff-Coroner ("CCCSO") as a deputy sheriff.  The city of San Ramon contracted with the

4    CCCSO to provide police services for the city and the CCCSO provides its employees to

5    staff the San Ramon Police Department.  In October 2003, Johnson was assigned to the San

6    Ramon Police Department and was working as a police officer.

7    Officer Johnson pulled over a vehicle for a traffic stop at about 11:17 p.m. on October

8    29, 2003.  Zameer Azam was driving the vehicle and Jennifer Bascom was a passenger.  The

9    parties disagree about whether Azam was violating any traffic law before he was stopped by

10   officer Johnson.

11   Officer Johnson ran a warrant and driver's license check on Azam.  The parties

12   disagree about the level of hostility of Azam and Johnson exhibited during the initial

13   encounter: Johnson says Azam was aggressive, threatening to sue him, and yelling about

14   police harassment; Azam says Johnson was hostile toward him.  Johnson called for a back-up

15   unit, and two other San Ramon police officers responded to his call.

16   Azam refused to give officer Johnson permission to search the vehicle.  Officer

17   Johnson obtained permission to search the vehicle from Bascom, who said the vehicle was a

18   rental car rented in her name.  The search had negative results.

19   Officer Johnson learned of the restraining orders on his radio dispatch.  He states:

20   While searching the vehicle, I learned from CCCSO Dispatch that Bascom had three
     restraining orders issued in Alameda County against Azam, and that the orders
21   included keep-away provisions.  I checked this information with the computer
     terminal in my police car.  I also asked Dispatch to contact Alameda County to
22   confirm the details of the restraining orders.  They told me the orders were confirmed.
     I also asked SRPD Officer Molien, who had also arrived to assist, to contact Alameda
23   County records offices directly and confirm the existence and contents of the
     restraining orders, and obtain copies of the orders.  Officer Molien reported to me that
24   he called them and was told by Alameda County records employees that there were
     valid restraining orders in effect that ordered Azam to stay at least 100 yards away
25   from Bascom and to have no contact with her.  Based on that specific information,
     received from CCCSO dispatch and Officer Molien, and the fact that Azam had been
26   traveling with Bascom in the rented vehicle, I placed Azam under arrest for violation
     of Penal Code Section 166 (violation or protective or stay-away orders).
27

28   Johnson Decl., ¶ 7.

2

United States District Court

For the Northern District of California

1    Azam told officer Johnson that the restraining orders had been modified or were no

2  longer valid and that he had papers showing that fact in a locked briefcase in the vehicle.

3  The parties disagree whether Azam was given an opportunity to obtain the papers.  Azam

4  states that he told officer Johnson that he could prove his contention with the papers in his

5  locked briefcase if the officer would uncuff him and allow him to retrieve the documentation,

6  but officer Johnson refused.  Azam Decl., ¶¶ 48-49. Officer Johnson disputes this, and says

7  that he offered to allow Azam or Bascom to retrieve the papers or that officer Johnson would

8  retrieve them "but Azam refused to open the briefcase himself or to allow me or Bascom to

9  open it."  Johnson Decl., ¶ 8.

10    Bascom told officer Johnson she thought the restraining orders were no longer valid.

11    Officer Johnson allowed Bascom to take the vehicle and leave the scene.

12    Officer Johnson also learned from a records check that Azam was on court probation

13  with terms that required him to obey all laws.  Azam states that he was not on probation, and

14  Johnson apparently does not dispute this.

15    Officer Johnson told Azam that he was placing him under arrest.  Officer Johnson put

16  Azam in the police car and took him away.  Azam states that he was taken first to the San

17  Ramon police station and then to county jail.  He states that he asked for a phone call so he

18  could call his father and have him bring down the court orders.  Officer Johnson refused and

19  told Azam he could make a call once he was in the county jail.

20    Azam spent about 1-1/2 days in custody, having been arrested at about 11:30 p.m. on

21  October 29 and having been released at about 2:30 p.m. on October 31, 2003.  See Azam

22  Decl., Exh. L.  He was released from jail on October 31, 2003 after his attorney provided

23  information to the San Ramon police department that the keep-away provisions of the

24  restraining orders had been modified.  See Azam Decl., Exh. K.

25    Within a few hours of the arrest, officer Johnson received facsimile materials from the

26  Alameda County Sheriff  These facsimile materials included three restraining orders.  First,

27  there was a copy of a Protective Order In Criminal Proceeding in People v. Zameer Riaz

28  Azam, Alameda County Case No. 94336.  That document had three boxes checked (also

3

referred to as the "keep-away" provisions) that ordered that Azam "shall have no personal, telephonic, or written contact with the protected persons named below," and "shall not come within 100 yards of the protected persons named below."  The protected person was Jennifer Louise Bascom.  The protective order was dated November 22, 2002, expired 3 years after its issuance, had a court seal next to the signature, and was marked as a "law enforcement copy."  See Johnson Decl., Exh A, p. 7.  Second, there was a copy of a Protective Order In Criminal Proceeding in People v. Zameer Riaz Azam, Alameda County Case No. 94336 and also marked "transferred from 101667 to 94336" in the case number box.  That document had none of the keep-away provisions checked, but did order Azam not to harm Jennifer Louise Bascom.  The protective order was dated February 26, 2002, was to expire on February 26, 2004, was signed but had no court seal, and was marked as a "law enforcement copy.".  See Johnson Decl., Exh A, p. 8.  Third, there was a very poor quality copy of a Protective Order In Criminal Proceeding in People v. Zameer Riaz Azam, Alameda County Case No. 105131.  The quality of the faxed copy is so poor that it cannot be determined with certainty as to whether any of the three boxes in the keep-away provisions were checked (although it appears that they were) and the name of the protected person cannot be read.  The protective order's date is unreadable, but at the top it is marked "exp. 12-4-05."  See Johnson Decl., Exh A, p. 10.  The protective order was signed and had a court seal.  In addition to these orders, the fax contained three pages of computer print-outs that had numerous entries on them.  Each of the computer print-outs included an entry that stated, "*DO NOT ARREST OR DETAIN BASED SOLELY ON THIS RESPONSE*".  Johnson Decl., Exh. A, pp. 9, 11, 13.

Before the date on which Azam was arrested, the protective orders had been modified to eliminate the keep-away provisions.  See Azam Decl., Exh. D.   Azam's evidence consisted of a copy of a December 11, 2002 modification to the protective order in Case No. 105131 and of a copy of a December 11, 2002 modification to the protective order in Case No. 94336.  Id.  The keep-away provisions were not checked on either modification order.  Id.

Azam contends that officer Johnson actually had received a modified protective order

4

1   showing that the keep-away provisions had been removed.  Azam contends that his point is

2   proven by his Exhibit I, which he contends is a clearer copy of his Exhibit H (and that his

3   Exhibit H is the same as the document at page 10 of Exhibit A to the Johnson Declaration).

4   Exhibit I is no more a copy of Exhibit H than a cat is a dog.  The forms have the obvious

5   different markings identified by defendant.  Thus, Azam has not provided evidence to

6   establish or even create a triable issue of fact whether officer Johnson had received Exhibit I.

**VENUE AND JURISDICTION**

8       Venue is proper in the Northern District of California because the events or omissions

9   giving rise to the claims occurred in Contra Costa County, which is located within the

10  Northern District.  See 28 U.S.C. §§ 84, 1391(b).  This Court has federal question

11  jurisdiction over this action brought under 42 U.S.C. § 1983.  See 28 U.S.C. § 1331.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

13      Summary judgment is proper where the pleadings, discovery and affidavits show that

14  there is "no genuine issue as to any material fact and [that] the moving party is entitled to

15  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A court will grant summary judgment

16  "against a party who fails to make a showing sufficient to establish the existence of an

17  element essential to that party's case, and on which that party will bear the burden of proof at

18  trial . . . since a complete failure of proof concerning an essential element of the nonmoving

19  party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477

20  U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit

21  under governing law, and a dispute about such a material fact is genuine "if the evidence is

22  such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v.

23  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

24      Generally, the moving party bears the initial burden of identifying those portions of

25  the record which demonstrate the absence of a genuine issue of material fact.  The burden

26  then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or

27  by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts

28  showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (citations omitted).

5

United States District Court

For the Northern District of California

1    Where, as is the situation with defendant's qualified immunity defense, the moving

2  party bears the burden of proof at trial, it must come forward with evidence which would

3  entitle it to a directed verdict if the evidence went uncontroverted at trial.  See Houghton v.

4  Smith, 965 F.2d 1532, 1536 (9th Cir. 1992).  It must establish the absence of a genuine issue

5  of fact on each issue material to its affirmative defense.  Id. at 1537; see also Anderson v.

6  Liberty Lobby, Inc., 477 U.S. at 248.  When the defendant-movant has come forward with

7  this evidence, the burden shifts to the non-movant to set forth specific facts showing the

8  existence of a genuine issue of fact on the defense.

9    A verified complaint may be used as an opposing affidavit under Rule 56, as long as it

10 is based on personal knowledge and sets forth specific facts admissible in evidence.  See

11 Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's

12 verified complaint as opposing affidavit where, even though verification not in conformity

13 with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and

14 correct, and allegations were not based purely on his belief but on his personal knowledge).

15 Plaintiff's amended complaint, which superseded his original complaint, is not verified and

16 cannot be considered as evidence.

17    The court's function on a summary judgment motion is not to make credibility

18 determinations or weigh conflicting evidence with respect to a disputed material fact.  See

19 T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The

20 evidence must be viewed in the light most favorable to the nonmoving party, and the

21 inferences to be drawn from the facts must be viewed in a light most favorable to the

22 nonmoving party.  See id. at 631.

23                                 **DISCUSSION**

24 A.    The Summary Judgment Motion

25    The defense of qualified immunity protects "government officials . . . from liability

26 for civil damages insofar as their conduct does not violate clearly established statutory or

27 constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,

28 457 U.S. 800, 818 (1982).  The rule of qualified immunity "'provides ample protection to all

6

1  but the plainly incompetent or those who knowingly violate the law.'" <u>Burns v. Reed</u>, 500

2  U.S. 478, 495 (1991) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

3         In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Supreme Court set forth a particular

4  sequence of questions to be considered in determining whether qualified immunity exists.

5  The court must consider this threshold question:  "Taken in the light most favorable to the

6  party asserting the injury, do the facts alleged show the officer's conduct violated a

7  constitutional right?"  <u>Id.</u> at 201.  If no constitutional right was violated on the facts as

8  alleged, the inquiry ends and defendant prevails.  <u>See id.</u>  If, however, "a violation could be

9  made out on a favorable view of the parties' submissions, the next, sequential step is to ask

10  whether the right was clearly established. . . .  'The contours of the right must be sufficiently

11  clear that a reasonable official would understand that what he is doing violates that right.' . . .

12  The relevant, dispositive inquiry in determining whether a right is clearly established is

13  whether it would be clear to a reasonable officer that his conduct was unlawful in the

14  situation he confronted."  <u>Id.</u> at 201-02 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640

15  (1987)).

16         1.      There Was A Constitutional Violation

17         The Fourth Amendment requires that an arrest be supported by probable cause.

18  <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001); <u>Michigan v. Summers</u>, 452 U.S.

19  692, 700 (1981).  "An arrest is supported by probable cause if, 'under the totality of

20  circumstances known to the arresting officers, a prudent man would have concluded that

21  there was a fair probability that [the defendant] had committed a crime.'"  <u>Beier v. City of</u>

22  <u>Lewiston</u>, 354 F.3d 1058, 1065 (9th Cir. 2004) (citations omitted).

23         Probable cause cannot be established by an erroneous understanding of the law.

24  While an officer may have reasonable suspicion or probable cause even where his reasonable

25  understanding of the facts turns out to be mistaken, a mistake about what the law requires

26  cannot justify an arrest under the Fourth Amendment.  <u>Beier</u>, 354 F.3d at 1065 (citing cases).

27  Where the arrestee's conduct "'does not in any way, shape or form constitute a crime' . .

28  probable cause is lacking."  <u>Id.</u> at 1066.

**United States District Court**
For the Northern District of California

7

**United States District Court**
For the Northern District of California

1    Here, Azam was not in violation of the terms of the protective orders because they had

2 been modified to eliminate the keep-away provisions.  As a result of the modifications, Azam

3 did not have to physically stay away from Bascom.  There was not probable cause for officer

4 Johnson to arrest him under California Penal Code § 166 for being in violation of the

5 protective orders.  Under Beier, one must conclude that there was a Fourth Amendment

6 violation.

7            2.        Qualified Immunity Is Not Appropriate Because Officer Johnson Did
                       Not Have A Reasonable Understanding Of The Facts.
8
      The second step of the Saucier analysis is to determine whether the right was clearly
9
   established such that a reasonable official would understand that what he was doing violates
10
   that right.  That an arrest must be based on probable cause is "bedrock" Fourth Amendment
11
   law, Beier, 354 F.3d at 1065, and defendant does not contend that principle was not clearly
12
   established at the time Azam was arrested.  "In the context of this case, the qualified
13
   immunity inquiry requires [the court] to consider whether, under the circumstances, it was
14
   objectively reasonable for the officer[] to believe that there was probable cause to arrest
15
   [Azam] for violating a protection order."  Id. at 1068.
16
      The current case is similar to the Beier case, where police officer was sued for false
17
   arrest based on the arrest of an ex-husband violating a protective order.  The officer had not
18
   read and did not know the terms of the protective order except as relayed to him by Beier's
19
   ex-wife, the protected person.  The police officer called the police dispatcher to confirm the
20
   issuance and service of the protective order but did not request information about the order's
21
   terms.  Id. at 1062.  When the officer arrived at the church where both spouses were present,
22
   the ex-wife advised him that she had a copy of the order in her purse.  The officer went to
23
   retrieve the purse with the order, but before he obtained it, encountered Beier and dealt with
24
   him without bothering to read the order.  Beier even asked the officer to read the order but
25
   the officer did not.  See id.  The officer arrested Beier when he refused to leave.  Beier
26
   determined that the officers were not entitled to qualified immunity because their reliance on
27
   the ex-wife's version of the protective order, without ascertaining its terms from a more
28

8

United States District Court
For the Northern District of California

1   reliable source, was not reasonable.  Beier does not establish a rule that official sources must

2   be relied on to the exclusion of information from an interested party, and is better read as an

3   application of the broader proposition that an officer must make a reasonable inquiry in

4   making a probable cause determination.

5          The unlawfulness of making a probable cause determination while deliberately

6   refusing to look at readily available exculpatory evidence would have been apparent to a

7   reasonable officer.  "An officer is not entitled to a qualified immunity defense . . . where

8   exculpatory evidence is ignored that would negate a finding of probable cause."  Broam v.

9   Bogan, 320 F.3d 1023, 1032 (9th Cir. 2003) (citing Kuehl v. Burtis, 173 F.3d 646, 651 (8th

10  Cir. 1999); see also Guerra v. I.N.S., 783 F.2d 1371, 1375 (9th Cir. 1986) (although

11  reasonable cooperation and division of labor is accepted in law enforcement, it is not

12  reasonable for INS officers to rely on another law enforcement officer's representation that a

13  warrant was being sought when INS officers failed to inquire into the nature and scope of the

14  warrant); Ahlers v. Schebil, 188 F.3d 365, 371-72 (6th Cir. 1999) (discussing cases and

15  concluding they stand for proposition that "officers, in the process of determining whether

16  probable cause exists, cannot simply turn a blind eye toward potentially exculpatory evidence

17  known to them in an effort to pin a crime on someone.") Although an officer is not "required

18  by the Constitution to investigate independently every claim of innocence, whether the claim

19  is based on mistaken identity or a defense such as lack of requisite intent" that statement was

20  made in a case where the arrest was pursuant to a warrant and probable cause was

21  determined to exist, see Baker v. McCollan, 443 U.S. 137, 145-46 (1979).  The fact that an

22  officer is under no duty to investigate further or look for exculpatory evidence after probable

23  cause is established does not mean that the officer can simply ignore readily available

24  evidence in determining whether probable cause exists. See Broam, 320 F.3d at 1032.  That

25  was precisely what officer Johnson did, according to Azam.

26         Under Azam's version of the disputed facts -- which the court accepts as true at the

27  summary judgment stage -- officer Johnson turned a blind eye toward evidence that was

28  readily available to him that would have shown that no crime had occurred.  Under those

9

United States District Court
For the Northern District of California

1    circumstances, one cannot say that officer Johnson acted reasonably in assessing the facts

2    and making his probable cause determination.  That it would have been reasonable to let the

3    prospective arrestee produce readily available evidence negating a criminal act is supported

4    by officer Johnson's statement that he tried to let Azam obtain the documents but Azam

5    refused.  Officer Johnson did check with several official sources, but at least most of those

6    sources seem to have been based on the same computerized records so that any error would

7    be repeated no matter how many inquiries he made.  If Azam simply had verbally protested

8    that he was innocent, that probably would not have been sufficient to undermine confidence

9    in the correctness of the dispatch information and official records check, but here there was

10   more: (1) Azam said the keep-away provisions had been modified, (2) the protected person

11   (Bascom) also said she thought the orders were no longer in effect, (3) Azam offered to show

12   readily available documentation that allegedly proved his point that the keep-away orders

13   were no longer in force, and (4) the computer print-outs faxed with the protective orders sent

14   to Johnson stated, "do not arrest or detain based solely on this response."  A reasonable

15   officer, faced with no countervailing safety concerns, would have given Azam a chance to

16   show that the orders had been modified.  This situation is roughly similar to one in which a

17   police officer runs a computer check, finds out a car is stolen, and arrests the driver over the

18   protests of the driver and a passenger who say they are the buyer and seller of the car and

19   offer to show the bill of sale to the police officer.  An officer's flat refusal to consider

20   evidence of the possibility of a computer error under the circumstances shows his factual

21   determination to be an unreasonable one.

22          The unreasonableness of the refusal to consider that the orders may have been

23   modified is also suggested by the lack of circumstances that suggested quick action was

24   necessary to avoid immediate harm.  There was no evidence that Azam had just abused

25   Bascom or was about to abuse her or that she was otherwise in any danger from him.  The

26   arrest was premised on Azam's failure to comply with the court order to keep away from her,

27   and that crime was only a misdemeanor.  (Of course, an arrest would have been permissible

28   had the keep-away provisions of restraining orders not been modified.  See Atwater v. Lago

10

1  Vista, 532 U.S. at 354 (Fourth Amendment does not forbid an arrest without a warrant even

2  for misdemeanors not amounting to or involving breach of the peace).)   Balanced against the

3  nature of the crime was the likelihood that the arrestee would spend at least some time in jail

4  if the officer was wrong that the protective orders were in force and therefore wrong that a

5  crime had been committed.  Azam spent 1-1/2 days in jail while the problem was

6  straightened out.

7          Furthermore, the unfortunate reality is that the cycle of domestic violence is such that

8  it would not be unexpected for a keep-away order to be modified at the victim's request.  A

9  reasonable police officer would be open to the possibility that the victim had changed her

10  mind and the order had been modified.  Indeed, there are hints of that cycle here.  There were

11  three separate protective orders issued against Azam with Bascom listed as the protected

12  person.  And Azam is currently in prison based in part on his physical abuse of Bascom just

13  one day after being released from jail following the arrest he complains about in this case.

14  See Azam v. County of Alameda, Case No. C 05-1627 MHP, Request for Judicial Notice

15  filed Dec. 22, 2006, Exh. A, pp. 2-3 & n. 8 (California court of appeal decision describing

16  facts leading to Azam's conviction for, among other things, inflicting corporal injury on a

17  cohabitant, kidnapping and making criminal threats based on the events of November 1,

18  2003).

19          The court cannot say that it was reasonable for officer Johnson to make his probable

20  cause determination while ignoring Azam's offer to show him readily available documents

21  that showed that the protective orders had been modified.  Officer Johnson is not entitled to

22  judgment as a matter of law on the merits of the Fourth Amendment claim or on the defense

23  of qualified immunity.

24  B.        Plaintiff's Motion For Stay To Do Discovery

25          Plaintiff filed a "motion to stay proceedings on defendant's motion for summary

26  judgment until further discovery is complete," and cited Federal Rule of Civil Procedure

27  56(f) as authority for the stay.  The motion is denied as moot because the court has denied

28  defendant's motion for summary judgment.

United States District Court

For the Northern District of California

11

1

**CONCLUSION**

2        For the foregoing reasons, defendant's motion for summary judgment is DENIED

3 (docket # 15) and plaintiff's motion for a stay to do discovery is DENIED (Docket # 23).

4        No later than **March 16, 2007**, the parties must file and serve status reports indicating

5 what discovery remains to be done, the amount of time needed for discovery, whether any

6 further motions will be filed, when they will be ready for trial, and the expected length of the

7 trial.  The status conference statements need not be jointly prepared.

8        IT IS SO ORDERED.

9 Dated: _____Feb. 2, 2007_____                    _____

                                                             Marilyn Hall Patel
10                                                           United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28